UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZI MARIE H.,<br><br>                              Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of<br>Social Security,[1]<br><br>                              Defendant. | Case No.:  3:22-cv-01963-WQH-AHG<br><br>**REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF No. 19]** |

On August 15, 2023, Suzi Marie H. ("Plaintiff") and the Commissioner of Social Security ("Commissioner" or "Defendant") filed a Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to 42 U.S.C. § 405(g), regarding Plaintiff's request for judicial review of a decision by the Commissioner denying Plaintiff's application for a period of disability and disability insurance benefits. ECF No. 19.

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Although Plaintiff originally brought this action against Former Acting Commissioner Kilolo Kijakazi, this case may properly proceed against Martin O'Malley pursuant to 42 U.S.C. § 405(g).

After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **RECOMMENDS** that the District Judge **REVERSE** the Commissioner's denial of disability benefits and **REMAND** for further administrative proceedings.

## I.   PROCEDURAL BACKGROUND

Plaintiff was born in 1968, making her an individual "closely approaching advanced age" on her alleged disability onset date. ECF No. 15, Certified Administrative Record ("AR") at 24; *see* 20 C.F.R. § 404.1563. Her past relevant work was as a loan officer, computer sales representative, and paralegal. AR 25.

On January 25, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning August 1, 2020.[2] AR 164–70. Plaintiff's application was denied on April 9, 2021. AR 48. On April 28, 2021, Plaintiff requested reconsideration. AR 91. Plaintiff's claims were denied at the reconsideration level on July 13, 2021. AR 92–96. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on August 9, 2021, and a hearing was held on December 15, 2021. AR 30–47, 97. Plaintiff was represented by counsel at the hearing and provided testimony. AR 34–42. A vocational expert also testified. AR 42–46.

On February 8, 2022, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled under sections 216(i) or 223(d) of the Social Security Act, and accordingly denying disability insurance benefits. AR 15–26. On March 2, 2022, Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 160. On November 9, 2022, when the Appeals Council denied Plaintiff's request for review, the ALJ's decision became

---

[2] Though the parties identify August 12, 2020, as Plaintiff's disability onset date in their joint motion, the Court relies on the Certified Administrative Record, which includes Plaintiff's application summary and the ALJ's opinion, which identify August 1, 2020, as her disability onset date. *Compare* ECF No. 19 at 2 *with* AR 164 *and* AR 15–16.

the final decision of the Commissioner. AR 1–5; *see* 42 U.S.C. § 405(h); *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008).

On December 12, 2022, Plaintiff timely commenced this appeal, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. The Commissioner filed the Administrative Record on March 17, 2023. ECF No. 15. Pursuant to the Court's briefing schedule (*see* ECF No. 16), the parties timely filed their Joint Motion on August 15, 2023. ECF No. 19.

## II.   SUMMARY OF ALJ'S FINDINGS

### A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id.*; *see also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsberry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation

process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[3] 96-9p, 1996 WL 374184, at *1 (July 2, 1996). An RFC reflects the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the vocational expert is incomplete and, therefore, the ALJ's reliance on the vocational expert's answers is improper).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of

---

[3] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy that the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1)–(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Lounsbury*, 468 F.3d at 1114–15; *Hill*, 698 F.3d at 1162. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

### B.   The ALJ's Application of the Five-Step Process in this Case

The ALJ determined that Plaintiff had sufficient quarters of coverage for the purpose of her disability claim to remain insured through December 31, 2025. AR 15. Accordingly, the relevant period for the disability analysis is the alleged disability onset date of August 1, 2020, through February 11, 2022, the date of the ALJ's decision.

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 1, 2020. AR 17. At step two, the ALJ found that Plaintiff has the following severe impairments: residuals of right shoulder surgeries;

minimal degenerative changes of the lumbar spine; mild degenerative changes of the knees; and unspecified myalgia/myositis/arthralgia. AR 17. The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. AR 32. The ALJ found that Plaintiff has the following non-severe medically determinable impairments, which "did not … cause more than a minimal limitation in the claimant's ability to perform basic physical or mental work activities[:]" pulmonary embolism, thyroid disease, centrilobular emphysema, and chronic obstructive pulmonary disease ("COPD"). AR 18. The ALJ also found that Plaintiff's idiopathic and intermittent tremors of the right hand, tendonitis of the left thumb, tendinitis of the feet, and mild sleep apnea had not lasted for a continuous 12-month period and therefore did not meet the duration requirement to be considered severe impairments. AR 18. The ALJ additionally found that Plaintiff's seropositive rheumatoid arthritis diagnosis could not be confirmed, and that her fibromyalgia was not considered a medically determinable impairment because the diagnosing criteria was not met. AR 18–19. The ALJ, however, did "fully consider the symptoms of fibromyalgia under the severe impairment of unspecified myalgia, myositis, and arthralgia." AR 20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

Before proceeding to step four, the ALJ addressed Plaintiff's RFC. The ALJ determined that Plaintiff has the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b) with the following limitations:

> could lift and carry 20 pounds occasionally, ten pounds frequently; could stand and walk for six hours out of eight, sit for six hours out of eight; should never climb ropes, ladders or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasional reaching with the right arm out in front, laterally, and overhead; frequent handling and fingering; and should avoid concentrated exposure to temperature extremes of hot and cold, vibration, fumes, odors, dust, and gases, unprotected heights and moving and dangerous machinery.

AR 20. The ALJ considered Plaintiff's subjective statements and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence[.]" AR 21. The ALJ highlighted, for example, that Plaintiff walked her dog and exercised, when she had reported a limited ability to stand or walk. AR 22. The ALJ also highlighted that medication and conservative treatment had been successful in controlling and improving Plaintiff's symptoms. AR 22.

The ALJ found the opinions of state agency medical consultants Dr. Kalmar and Dr. Linder to be persuasive. AR 23. The ALJ highlighted that Dr. Kalmar's and Dr. Linder's opinions "supported their assessments with a detailed analysis of the evidence on the record." AR 23. The ALJ explained that Dr. Kalmar's and Dr. Linder's opinions were consistent with objective evidence in the record, including the diagnostic testing showing only "minimal lumbar degenerative disc and facet disease without stenosis or nerve root compression, and interval significant improvement in appearance of bilateral sacral insufficiency fractures. It was also consistent with the physical examination findings showing mild limitation of range of motion and strength in the right shoulder, no joint instability, and intact neurovascular findings." AR 23.

The ALJ found the opinions of Dr. Proshkina and Dr. David[4] to be unpersuasive. AR 23–24. The ALJ explained that the limitations assessed by Dr. Proshkina were "grossly overly restrictive and unsupported by the objective evidence and the record as a whole, including the findings of minimal degenerative changes of the lumbar spine, knees and

---

[4] The ALJ and the parties incorrectly refer to "David Tal, M.D." (AR 21, 23) and "Dr. Tal" (AR 21, 24; ECF No. 19 at 4–16). *See, e.g.*, AR 283 (addressing referral letter to "Dr. David"); AR 323–40 (progress notes, signed by "Tal. S. David, MD"); AR 345 (operative report, signed by "Tal David, M.D."); *see also Find a Specialist: Tal S. David*, Synergy Orthopedics, https://synergysmg.com/specialist/tal-s-david-md/ (last visited Mar. 4, 2024).

feet." AR 23. The ALJ explained that Dr. David's opinion "was inconsistent with the objective evidence of record, including [his] own examination findings, which have revealed only mild limitation of range of motion and strength in the right shoulder and no evidence of shaking." AR 24.

At step four, the ALJ compared the RFC assessed to the demands of Plaintiff's past relevant work. The ALJ considered her work as a loan officer, Dictionary of Occupational Titles ("DOT") 186.267-018, Specific Vocational Preparation ("SVP") 7, which is a sedentary per the DOT and light as performed, occupation. AR 24. The ALJ considered her work as a computer sales representative, DOT 275.257-010, which is a light and skilled, at SVP 6, occupation. AR 24. The ALJ considered her work as a paralegal, DOT 119.267-026, which is a light per the DOT, light and medium as performed, and skilled, at SVP 7, occupation. AR 24. Based on the testimony of the vocational expert, Gregory Jones, the ALJ concluded that Plaintiff is "unable to perform past relevant work as actually or generally performed." AR 24.

At step five, upon consideration of Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 25. Based on the testimony of the vocational expert, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 25–26. The ALJ concluded that Plaintiff could work in the following light, unskilled (SVP 2) level occupations: usher (DOT 344.677-014), furniture rental clerk (DOT 295.357-018), or a counter clerk (DOT 249.366-010). AR 25. Accordingly, the ALJ determined that Plaintiff was not disabled under Sections 216(i) or 223(d) of the Social Security Act at any time from the alleged onset date of August 1, 2020, through February 11, 2022, the date of the ALJ's decision. AR 26.

The issues presented by Plaintiff for appeal are (1) whether the ALJ adequately considered the medical opinions of Dr. Proshkina and Dr. David, and (2) whether the ALJ properly considered Plaintiff's testimony. ECF No. 19 at 4.

### III.   STANDARD OF REVIEW

The Court's role is to determine whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Holohan*, 246 F.3d at 1201. If so, the Court must affirm.

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, as well as resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec. Admin.*, 768 F.3d 925, 929 (9th Cir. 2014). Even if the decision was based on legal error, however, a court may not reverse an ALJ's decision if the error is harmless. Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### IV.   WHETHER THE ALJ ADEQUATELY CONSIDERED THE MEDICAL OPINIONS OF DR. PROSHKINA AND DR. DAVID

First, Plaintiff argues that the ALJ did not properly consider the medical opinions of Dr. Proshkina and Dr. David. ECF No. 19 at 5–7. Additionally, Plaintiff argues that the

9

ALJ's RFC assessment was not supported by substantial evidence, because he did not state reasons for rejecting the manipulative limitations described by Dr. Proshkina and Dr. David. *Id*. at 7–8.

### A.   Parties' Positions

Plaintiff contends that the ALJ incorrectly found Dr. Proshkina's and Dr. David's opinions unpersuasive. ECF No. 19 at 5. Plaintiff explains that the ALJ's stated reasons—that the opinions were "grossly over restrictive and unsupported by the objective evidence and the record as a whole" and "inconsistent with the objective evidence of record"—are insufficient. *Id*. at 5–6. Specifically, Plaintiff argues that the "ALJ failed to consider and discuss medical evidence in the record supporting Dr. Proshkina's and Dr. [David]'s findings of severe limitations in [Plaintiff]'s ability to work with her hands." *Id*. at 8. Plaintiff points to the ALJ's citations to treatment records, which purportedly did not include findings regarding Plaintiff's hands. *Id*. at 5–6. Plaintiff reiterates that the ALJ must consider a claimant's limitations resulting from all their impairments when crafting the RFC, not just those labeled "severe." *Id*. at 7. Plaintiff summarizes treatment records showing she had "'severe difficulties in using both hands' due to tremors in her right hand," and contends that the "ALJ did not state reasons supported by substantial evidence for rejecting the manipulative limitations described by" Dr. Proshkina and Dr. David. *Id*. at 7–8.

Defendant argues that the ALJ "reasonably evaluated the persuasiveness of" Dr. Proshkina's and Dr. David's medical opinions, and "reasonably articulated the supportability and consistency factors" in finding those opinions unpersuasive. ECF No. 19 at 8–9. Defendant argues that, because Dr. Proshkina's opinion was presented in a check-box format without any explanation or citations, her opinion lacked supportability. *Id*. at 9. Regarding consistency, Defendant argues that Dr. Proshkina's extreme limitations regarding sitting, standing, and walking were at odds with the objective medical records which "showed largely benign findings" and repeated finds of "normal gait." *Id*. at 9–10. Defendant does not address Dr. Proshkina's opinions regarding Plaintiff's hands. As for

Dr. David, Defendant argues that his opinion regarding Plaintiff's right arm limitations lacks supportability because his own findings repeatedly showed "mild limitation of range of motion" and mild tenderness. *Id*. at 10–11. Regarding consistency, Defendant contends that Dr. David's opinion was not only inconsistent with his own examinations, but with the record as a whole, since Plaintiff had reported significant improvement of her right arm pain after her shoulder repair surgery. *Id*. at 11. Defendant does not address Dr. David's opinions regarding Plaintiff's hands.

Plaintiff responds that a check-box format medical opinion should not be rejected on supportability grounds because the "opinion does not stand alone; it is supported by her medical findings." ECF No. 19 at 12. Plaintiff summarized Dr. Proshkina's findings regarding Plaintiff's knee pain and difficulty walking, emphasizing that nothing provided substantial pain relief. *Id*. at 12–13. Thus, since Dr. Proshkina's medical opinion was supported by her own medical findings, Plaintiff argues that the ALJ erred by deeming her check-box opinion as unsupported. *Id*. at 13. As to Dr. David, Plaintiff argues that his opinion was consistent with the record as a whole. *Id*. at 14. In response to Defendant's examples of Plaintiff having a normal gait, Plaintiff points to other examples in the record of abnormal gait, arguing that the ALJ may not cherry-pick the record for normal strength and gait. *Id*. Plaintiff also reiterates that Dr. David repeatedly found persistent hand tremors, showing that his opinion regarding Plaintiff's hands "is supported by his own findings as well as the record as a whole" and therefore the ALJ should have found that his opinion met both the supportability and consistency factors. *Id*. at 15. Plaintiff also provides examples of conflicting information in the record regarding Plaintiff's ability to use and elevate her right arm. *Id*. Plaintiff argues that, even if her surgery improved her functioning in her right shoulder, "that improvement may not be used to assume improvement in other areas of functioning." *Id*. at 16.

### B. Medical Opinion of Dr. Proshkina

On October 29, 2021, Dr. Proshkina completed a physical capacities evaluation. AR 741. She listed Plaintiff's medical diagnosis as fibromyalgia; osteoarthritis of knees, hands,

feet, and cervical spine; and radial tunnel syndrome. AR 741. She opined that Plaintiff can rarely engage in fine manipulative activities (such as fingering, typing, or writing) with her right hand and never with her left hand. AR 741. Similarly, she opined that Plaintiff can rarely engage in gross manipulative activities (such as handling or grasping) with her right hand and never with her left hand. AR 741. However, she later opined that Plaintiff cannot use either hand for repetitive actions such as simple grasping, pushing/pulling arm controls, or fine manipulation. AR 742. She opined that Plaintiff can never push or pull, with either arm, in any direction. AR 741. She opined that Plaintiff can never engage in overhead work. AR 741. She opined that Plaintiff can occasionally lift or carry up to 5 lbs., but can never lift or carry any greater weight. AR 741–42. She opined that Plaintiff can sit for one hour at a time, totaling one hour in an eight-hour workday. AR 742. She opined that Plaintiff cannot stand or walk at all during an eight-hour workday. AR 742. She opined that Plaintiff cannot use her right foot or both feet for repetitive movements such as pulling and pushing foot controls, but is able to with her left foot. AR 742. She opined that Plaintiff is unable to bend, squat, crawl, climb, or reach. AR 742.

The ALJ found Dr. Proshkina's opinion "unpersuasive because the limitations were grossly overly restrictive and unsupported by the objective evidence and the record as a whole, including the findings of minimal degenerative changes of the lumbar spine, knees and feet (6F/29; 13F/8, 29)." AR 23.

## C.    Medical Opinion of Dr. David

On November 3, 2021, Dr. David completed a physical capacities evaluation. AR 744. He listed Plaintiff's medical diagnosis as radial tunnel syndrome, essential tremor, strain of muscle/tendons of right shoulder. AR 744. He opined that Plaintiff can rarely engage in fine manipulative activities (such as fingering, typing, or writing) with her right hand. AR 744. Similarly, he opined that Plaintiff can rarely engage in gross manipulative activities (such as handling or grasping) with her right hand. AR 744. He opined that Plaintiff can never push or pull with her right arm, in any direction. AR 744. He opined

that Plaintiff can never engage in overhead work. AR 744. He opined that Plaintiff cannot lift any weight with her right arm. AR 744.

The ALJ found Dr. David's opinion "unpersuasive because it was inconsistent with the objective evidence of record, including Dr. [David]'s own examination findings, which have revealed only mild limitation of range of motion and strength in the right shoulder and no evidence of shaking (see, e.g., 6F/17; 10F/4, 7, 10, 18, 23)." AR 24.

### D.    Legal Standard

With respect to the ALJ's consideration of medical opinion evidence, the Social Security Administration's revised regulations for considering medical opinions and prior administrative findings, found at 20 C.F.R. § 404.1520c(c)(1)–(c)(5), apply because Plaintiff applied for disability after March 27, 2017. AR 164–70 (filed on January 25, 2021). The Ninth Circuit has recognized that these new regulations upend the longstanding treating physician rule. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Rather than attributing deference to a medical opinion based on the nature of the relationship between the physician and the claimant, an ALJ must evaluate the "persuasiveness" of any medical opinions. *Id.* at 792.

In evaluating persuasiveness, an ALJ must consider the medical source opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *Id.*; 20 C.F.R. § 404.1520c(c)(1)–(c)(5). Though an ALJ may discuss each of the factors to be considered in his opinion, the regulations only require the ALJ to explain how he considered the most important factors – supportability and consistency – when determining a medical source's persuasiveness, unless two conflicting medical sources are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)–(3). Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. 20 C.F.R. § 404.1520c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). An

13

ALJ must explain his analysis of a medical opinion as persuasive or not persuasive. *Woods*, 32 F. 4th at 792 ("The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.") (quoting 20 C.F.R. § 404.1520c(b)).

Under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F. 4th at 787; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (explaining how an ALJ weighing a medical opinion must provide an explanation supported by substantial evidence, which articulates how they considered supportability and consistency); *Sloane S. v. Kijakazi*, No. 21cv1043-MMA-MSB, 2023 WL 2017284, at *4 (S.D. Cal. Feb. 15, 2023). ALJs must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to determine whether that reasoning is supported by substantial evidence. *Titus L.S. v. Saul*, No. 20cv04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)). The Ninth Circuit has indicated that ALJs should attempt to use these terms "with precision." *Woods*, 32 F.4th at 793 n.4.

Ultimately, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Massey v. Kijakazi*, No. 21-35986, 2022 WL 16916366, at *1 (9th Cir. Nov. 14, 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014)); *see also Labryssa v. Kijakazi*, No. 21cv04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) (finding a lack of substantial evidence where the ALJ failed to engage with the medical opinion "in any meaningful sense" and "made only a passing assessment" of the supportability and consistency factors).

//

//

1

**E.     Whether the ALJ Properly Considered Dr. Proshkina's Opinion**

2      When implementing the new regulations regarding the evaluation of medical

3   opinions, the Social Security Administration emphasized that "there is a difference

4   between considering evidence and articulating how we consider evidence," and reiterated

5   that "[w]e expect that the articulation requirements in these final rules will allow a

6   subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning."

7   Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017

8   WL 168819, at *5858 (Jan. 18, 2017). Here, the ALJ did not do so. As to the supportability

9   prong, the Court finds that merely noting that Dr. Proshkina's opinion is "unsupported by

10  the objective evidence" without any citations to Dr. Proshkina's treatment notes,[5] is

11  insufficient. *See Tina L. R. v. Kijakazi*, Case No. CV 21-3586 PVC, 2022 U.S. Dist. LEXIS

12  132053, 2022 WL 6632198, at *4 (C.D. Cal. July 25, 2022) (remanding because "the mere

13  conclusion that Dr. Weiss's opinion is 'inconsistent with the greater record' [] does not

14  provide the level of specificity necessary for Plaintiff or this Court to evaluate the ALJ's

15  reasoning. … The ALJ does not cite to any medical records to support her conclusions.");

16  *Sandra B. v. Kijakazi*, No. 20cv11359-GJS, 2022 WL 2651981, at *6 (C.D. Cal. July 8,

17  2022) ("the ALJ's conclusory statement otherwise was insufficient as an explanation for

18  how the factor of supportability was considered. … The ALJ's single-sentence statement

19  fails to substantively engage with Dr. Burnett's assessment."); *see also Walker v. Comm'r*

20  *of Soc. Sec. Admin.*, No. 22cv1871-EJY, 2024 WL 64784, at *4 (D. Nev. Jan. 4, 2024) (by

21  failing to include record citations to support his conclusion regarding supportability and

22  consistency, the "ALJ therefore failed to 'build an accurate and logical bridge' from the

23  evidence to his conclusions, … Indeed, in order to review the ALJ's findings as-is, the

24

---

25

26  [5] The sole citations in the ALJ's persuasiveness analysis of Dr. Proshkina's opinion were "(6F/29; 13F/8, 29)." AR 23. These citations correspond with a record removed from the

27  record because it references another individual (AR 347), an October 21, 2021, x-ray of right knee ordered by Dr. Tran (AR 752), and Sept. 15, 2021, treatment notes of Dr.

28  Tutuneu (AR 773), respectively.

Court would need to guess what analysis pertains to which factor, and further guess where in the record the ALJ found evidence to support his findings. … This, in itself, is reason to remand for a new decision") (internal citation omitted); *accord Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

The Court notes that, elsewhere in the ALJ's opinion, he briefly summarized Dr. Proshkina's treatment of Plaintiff and does cite to the record. However, these citations do not sufficiently connect to the ALJ's supportability analysis. *See Tina L. R.*, 2022 WL 6632198, at *5 (when the ALJ made findings about a doctor's treatment records "in reviewing the overall record," the court found that this was insufficient to support his supportability and consistency analysis because, "while the ALJ may have made these findings, she did not cite these records in dismissing Dr. Weiss's opinion. The Court is 'constrained to review the reasons the ALJ asserts.'"); *Q.C. v. Kijakazi*, No. 21cv2481-ADS, 2022 U.S. Dist. LEXIS 171144, at *12 (C.D. Cal. Sept. 21, 2022) ("Although the ALJ summarized [the doctor]'s opinions prior to finding that his opinions were not persuasive, this summary does not articulate the ALJ's evaluation of the supportability and consistency factors").

Further, the Court notes that these citations would not pass muster had they been in the ALJ's supportability analysis. For example, the ALJ cites to 7F/33 (AR 388) as evidence that Plaintiff had "right shoulder x-ray findings of mild degenerative changes, slightly more than expected for patient with an age of 51." AR 22. However, this treatment note is from January 24, 2020, over seven months <u>before</u> Plaintiff's disability onset date of August 1, 2020. AR 388. Moreover, the cited treatment note is from seven months before Plaintiff's first right shoulder surgery, and a year before her second right shoulder surgery—the fact that Plaintiff had two surgeries on her right shoulder after this treatment note speaks to its lack of persuasiveness here, as surgeries are not performed for mild impairments. AR 388; *see Buethe v. Comm'r of Soc. Sec. Admin.*, No. 20cv552-KJN, 2021

WL 1966202, at *7 (E.D. Cal. May 17, 2021) ("it appears the ALJ is attempting to construct an RFC based on an earlier version of plaintiff, rather than take plaintiff as she is at the time of the decision and consider whether her conditions were worsening. [] In this way, the ALJ's assessment of the record fails to take account of significant medical evidence"). Another example, the ALJ cited 13F/2 (AR 746) as evidence that "an examination revealed tenderness with palpation of the shoulders, right elbow, both wrists, and discomfort in the right foot and ankle, but a nonfocal neurological exam []. She was advised to see a podiatrist." AR 22. The ALJ omits that, during this October 21, 2021, visit, Dr. Proshkina observed <u>severe</u> tenderness, observed "difficulties with ambulation," and also advised Plaintiff to be evaluated by a wrist surgeon. AR 746–47.

In the joint motion, Defendant argues that the ALJ adequately articulated the supportability factor and contends that the ALJ's description of Dr. Proshkina's opinion being "unsupported by the objective evidence," (*see* AR 23), was a reference to Dr. Proshkina's opinion being "offered in a check-box format, without any explanation or citation to findings in support of her assessed limitations." ECF No. 19 at 9. However, post hoc rationalizations are insufficient. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Walker*, 2024 WL 64784, at *4 n.4 ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record. Unfortunately these are ad hoc rationales the Court cannot consider"); *Gibson v. Comm'r of Soc. Sec. Admin.*, No. 21cv2091-PHX-DWL, 2023 WL 2569536, at *10 ("although the Commissioner attempts to provide reasons why the ALJ could have found that NP Wampler's opinions were not supported by NP Wampler's treatment notes, this is the sort of post hoc rationale that is impermissible in the Social Security context"). Here, in his lengthy opinion, the ALJ never mentioned that Dr. Proshkina's nor Dr. David's opinion were in a check-box form, and never articulated the check-box form as a reason for any lack of supportability, thus, the Court declines to consider a reason the ALJ did not assert. *See Kimberli M.S. v. Kijakazi*, No. 21cv1836-AJB-MDD, 2023 WL 2346330, at *7 (S.D.

Cal. Mar. 3, 2023) ("Defendant incorrectly asserts that Plaintiff's argument [that the ALJ did not address the supportability factor] fails because Dr. Dhamija and Dr. John's 'opinions' consisted of checking off boxes in a questionnaire, and neither doctor cited any supporting objective medical findings. [] This is Defendant's impression of the record, but it is not the ALJ's interpretation of the facts because the ALJ did not make that finding. [] This Court's authority is limited to grounds asserted by the ALJ. [] It is possible that the doctors' opinions were not supported by objective medical findings, as Defendant suggests, but that was the ALJ's issue to resolve in the first instance, not this Court's") (internal citations omitted). Therefore, the ALJ erred when he failed to articulate the supportability factor with regard to Dr. Proshkina's opinion.

Regarding the consistency factor, the ALJ concluded that Dr. Proshkina's opinion was "grossly overly restrictive" and at odds with "the record as a whole." AR 23. To support his conclusion, the ALJ noted "findings of minimal degenerative changes of the lumbar spine, knees, and feet[,]" and made three citations to the record—one of which referenced another individual and was removed from the record. *See* AR 347. The remaining two citations, as they relate to Plaintiff's knees and feet, are not supported by substantial evidence. The ALJ cited 13F/8 (AR 752), the x-ray of Plaintiff's right knee taken on October 21, 2021, with "[n]o acute ossecus abnormality or significant degenerative changes identified." AR 752. Next, the ALJ cited 13F/29 (AR 773), x-rays of the feet and hands from July 28, 2021, which revealed "mild degenerative changes," as well as an MRI of her right knee from August 18, 2021, which revealed "mild chondral irregularity in the trochlear groove," small effusion, and a small Baker's cyst, which Dr. Tutuneu found were "changes consistent with patellofemoral chondrosis."[6] AR 773–74.

---

[6] Of note, during the appointment cited by the ALJ, Dr. Tutuneu performed a Durolane injection on Plaintiff's right knee after consideration of the MRI results, and noted that "she understands that the benefits [of the injection] will be limited." AR 774.

Because the ALJ erred with respect to the supportability factor, the Court will only briefly address the consistency factor. Without more, the ALJ does not explain why Dr. Proshkina's opinion is at odds with the record as a whole, especially as to Plaintiff's manipulative restrictions,[7] which are addressed at length in the record. *See, e.g.*, AR 336 (September 24, 2020, Dr. David); AR 845 (September 29, 2020, Dr. Thompson); AR 721 (November 24, 2020, Dr. David); AR 273 (December 14, 2020, Dr. Brown); AR 303 (February 16, 2021, Dr. Nolan); AR 707 (May 13, 2021, Dr. David); AR 789 (July 28, 2021, Dr. Tutuneu); AR 753 (October 14, 2021, Dr. Mainiero). This is error. *See David Allan G. v. Comm'r of Soc. Sec. Admin.*, No. 21cv162-DKG, 2023 WL 2479921, at *5 (D. Idaho Mar. 10, 2023) ("Ultimately, although the ALJ did reject the consultants' opinions as to Plaintiff's ability to understand, remember or apply information, she did not reject the remaining limitations and 'never explained why [s]he failed to include those specific mild functional limitations in [her] RFC assessment.' This was error").

### F.   Whether the ALJ Properly Considered Dr. David's Opinion

As to the supportability factor, the ALJ found Dr. David's opinion "unpersuasive because it was inconsistent with … Dr. [David]'s own examination findings, which have revealed only mild limitation of range of motion and strength[8] in the right shoulder and no evidence of shaking[9] (see, e.g., 6F/17; 10F/4, 7, 10, 18, 23)." AR 24. First, the Court notes

-----

[7] The ALJ also failed to address Dr. Proshkina's opinion and Dr. Proshkina's own treatment records (i.e., supportability) regarding Plaintiff's hand limitations. *See, e.g.*, AR 741–42; AR 501; AR 779; AR 775; AR 764; AR 746–47.

[8] The Court notes that Dr. David also examined the tenderness of Plaintiff's right shoulder during each visit. AR 706 (no tenderness); AR 709 (mild tenderness); AR 712 (mild tenderness, mild effusion); AR 720 (diffuse tenderness); AR 725 (mild tenderness).

[9] The Court notes that "the absence of certain symptoms from [a doctor's] report is insufficient to show a 'broader development' that [plaintiff] did not experience those symptoms." *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) ("It was improper for the ALJ to discount [plaintiff]'s testimony by 'cherry picking' the absence of certain symptoms from this report").

that Dr. David's treatment records from August 20, 2020 (AR 725, 10F/23), January 27, 2021 (AR 712, 10F/10), and February 17, 2021 (AR 709, 10F/7), report that "range of motion[] [was] not tested today" or was "deferred," and there are no indications on either date that Plaintiff's shoulder strength was measured. Thus, these records do not support the ALJ's conclusion that Plaintiff had "mild limitation of range of motion and strength." Similarly, Dr. David's treatment records from May 13, 2021 (AR 706, 10F/4), do show evidence of shaking by including an assessment of "essential tremor" in his notes. AR 707. The May 13, 2021, visit was consistent with regard to Plaintiff's right shoulder, where Dr. David found mild limitation of range of motion and mild limitation of strength in Plaintiff's right shoulder. AR 706. Last, the ALJ cited Dr. David's January 7, 2021, treatment notes (AR 720, AR 335, 10F/18, 6F/17), where he found mild limitation of range of motion and full strength for internal and external rotation but mild limitation of strength in supraspinatus strength in Plaintiff's right shoulder.

The ALJ omitted references to Plaintiff's other appointments with Dr. David. Similar to the first three citations, these do not support the ALJ's conclusion. On September 24, 2020, Dr. David reported that range of motion testing in her right shoulder was deferred and did not provide evidence of strength testing. AR 336. On November 24, 2020, Dr. David reported that Plaintiff's right shoulder had mild limitation of motion, but did not assess her strength. AR 721. Additionally, these omitted citations correspond with treatment notes that do show evidence of shaking. On September 24, 2020, and November 24, 2020, Dr. David observed the "right hand tremor [that] increased with movement/use decreased at rest." AR 336, 721. As such, the Court finds that the ALJ's supportability analysis is not supported by substantial evidence. *See Buethe*, 2021 WL 1966202, at *7 (collecting cases regarding cherry-picking in persuasiveness analyses, noting that "there is no room for ignoring significant portions of the record, despite the seeming malleability of the agency's new standards").

As to the consistency factor, the ALJ found Dr. David's opinion "unpersuasive because it was inconsistent with the objective evidence of record[.]" AR 24. The ALJ does

not cite any records in support of his conclusion. Though Defendant cites to records elsewhere in the opinion where Plaintiff reported significant improvement in her shoulder and did not use pain medication, (ECF No. 19 at 11), this is not persuasive. *See Tina L. R.*, 2022 WL 6632198, at *5 (when the ALJ made findings about a doctor's treatment records "in reviewing the overall record," the court found that this was insufficient to support his supportability and consistency analysis because, "while the ALJ may have made these findings, she did not cite these records in dismissing Dr. Weiss's opinion. The Court is 'constrained to review the reasons the ALJ asserts.'"); *Q.C*, 2022 U.S. Dist. LEXIS 171144, at *12 ("Although the ALJ summarized [the doctor]'s opinions prior to finding that his opinions were not persuasive, this summary does not articulate the ALJ's evaluation of the supportability and consistency factors."). Further, Defendant's post hac rationalization only includes a citation regarding Plaintiff's shoulder, and is noticeably silent on the consistency regarding Plaintiff's hand tremor, which is repeatedly assessed in various other doctors' treatment records. *See, e.g.*, AR 845 (September 29, 2020, Dr. Thompson); AR 501 (October 8, 2020, Dr. Proshkina); AR 779 (August 5, 2021, Dr. Proshkina); AR 764 (October 13, 2021, Dr. Proshkina); AR 753 (October 14, 2021, Dr. Mainiero).

Thus, the Court finds that the ALJ erred by not discussing the consistency factor. *Rios v. O'Malley*, No. 22cv1164-HBK, 2024 WL 280602, at *5 (E.D. Cal. Jan. 25, 2024) (remanding when ALJ did not "provide the requisite explanation" regarding consistency and explaining that, while defendant offered citations to various treatment records in its motion, the court did not consider this reasoning because "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking" are not permitted).

## G.    Whether the ALJ Properly Formulated the RFC

Plaintiff also contends that ALJ's RFC "assessment must consider a claimant's limitations and restrictions resulting from all their impairments, not only those considered 'severe.'" ECF No. 19 at 7 (citing 20 C.F.R. § 404.1545(e)). Plaintiff argues that the ALJ erred because he "did not state reasons supported by substantial evidence for rejecting the

manipulative limitations described by Drs. Proshkina and [David]." ECF No. 19 at 8. Of note, Defendant does not address Plaintiff's hand limitations in its brief with regard to the doctors' opinions and RFC assessment.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). The ALJ must consider "all of [a claimant's] medically determinable impairments of which [h]e [is] aware, including [he]r medically determinable impairments that are not 'severe.' 20 C.F.R. § 404.1545(a)(2); *see also Medlock v. Colvin*, No. CV-15-9609-KK, 2016 U.S. Dist. LEXIS 145692, at *12–14 (C.D. Cal. Oct. 20, 2016) ("The Agency requires an ALJ to <u>consider</u> the limiting effects of all impairments, including those which are non-severe. See 20 C.F.R. § 404.1545(e). <u>Consideration</u> of 'the limiting effects of all impairments' does not necessarily require the <u>inclusion</u> of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work.") (emphasis in original).

Here, at step two, the ALJ found that Plaintiff's "idiopathic and intermittent tremor of the right hand" and "tendonitis of the left thumb" were not severe because they had not "lasted or were expected to last for a continuous period of at least 12 months." AR 18. First, the Court also notes that Plaintiff's hand ailments were documented repeatedly in the record from September 2020 to October 2021. For example, there is objective evidence of a right hand tremor on September 24, 2020 (AR 336), September 29, 2020 (AR 845), October 8, 2020 (AR 501), November 24, 2020 (AR 721–22), May 13, 2021 (AR 707), August 5, 2021 (AR 779), October 13, 2021 (AR 764), and October 14, 2021 (AR 753). There is objective evidence of left thumb tendonitis on December 14, 2020 (AR 273), February 16, 2021 (AR 303), July 28, 2021 (AR 789), August 5, 2021 (AR 779), September 13, 2021 (AR 775), October 13, 2021 (AR 764), and October 21, 2021 (AR 746–47). Further, though there are not medical records from the day of the hearing, the Court notes subjective evidence—Plaintiff's testimony during the hearing—of a right hand tremor and

left thumb tendonitis on December 15, 2021. AR 37–38. Since Plaintiff does not argue error at step two, the Court need not address it further. And, regardless of the ALJ's finding at step two, all impairments must be considered when creating the RFC. *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. [] It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, 'in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.' [] The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (internal citations omitted).

Thus, though the ALJ found Plaintiff's hand ailments were not severe, he was still required to address them in the RFC analysis. *Zepur H. v. Kijakazi*, No. CV-23-1089-RAO, 2023 U.S. Dist. LEXIS 143787, at *13 (C.D. Cal. Aug. 16, 2023) ("the ALJ is obligated to consider severe and non-severe impairments when making the RFC determination"); *see* 20 C.F.R. §§ 404.1545(a)(1)–(2) (ALJ is required to consider the limiting effects of all of claimant's impairments, even the ones that are not severe, in determining the RFC); 20 C.F.R. § 404.1545(e) (the residual functional capacity assessment must consider a claimant's limitations and restrictions resulting from all their impairments, not only those considered "severe."); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim").

/ /

/ /

/ /

/ /

Even if the ALJ permissibly rejected every subjective statement from the Plaintiff regarding her hands,[10] the record is replete with objective findings regarding Plaintiff's hands. *See* AR 314 (August 5, 2020, Dr. Nolan observed that "the small joints of the hands demonstrated slight tenderness with trace hypertropic changes across the PIPs"[11]); AR 834 (September 11, 2020, Dr. Thompson observed "R[ight] thumb numbness/tingling after several minutes of performing shoulder pendulums that was not reproduced with any other exercises or positions."); AR 840 (September 22, 2020, Dr. Thompson observed "decreased R[ight] wrist/hand grip strength."); AR 336–37 (September 24, 2020, Dr. David observed a "right hand tremor [that] increased with movement/use decreased at rest," and referred Plaintiff to Dr. Schlemer "for further evaluation of the right hand tremor"); AR 842 (September 25, 2020, Dr. Thompson observed an "increase in ability to tolerate grip strengthening exercises though she was still fatigued at end of session."); AR 845 (September 29, 2020, Dr. Thompson observed "significant T1 myotome weakness on R[ight] compared to left, most notable at digits 4 and 5," and observed a "significant tremor, greatest at the 4th and 5th digits. No tremor at rest."); AR 310 (October 7, 2020, Dr. Nolan found "significant myofascial tenderness" on her elbows and wrists, however, there was "no active synovitis on the hands joints, wrists," reporting that her "range of motion is intact throughout"); AR 501 (October 8, 2020, Dr. Proshkina observed a "questionable positive Tinel[12] sign bilaterally," and observed a "tremor of right hand."); AR 867 (November 11, 2020, Dr. Thompson reported that Plaintiff's right hand grip and

---

[10] As discussed in section V(D), the ALJ did not discuss whether he found her subjective statements regarding her hands credible.

[11] Proximal inter-phalangeal joint is the middle joint of each finger. *PIP Joint Injury*, NHS: St. George's University Hospitals, https://www.stgeorges.nhs.uk/wp-content/uploads/2021/09/PIP-joint-injury.pdf (last visited Mar. 4, 2024).

[12] This tests for nerve compression through tingling when tapped. *Tinel's Sign*, Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (last visited Mar. 4, 2024).

pinch was 10psi, compared to her left hand at 20lbs); AR 306 (November 17, 2020, Dr. Nolan found "no active synovitis on the hands joints, wrists" and reported that her "range of motion is intact throughout."); AR 721–22 (November 24, 2020, Dr. David observed the "right hand tremor [that] increased with movement/use decreased at rest." and referred Plaintiff to Dr. Brown "for further evaluation of the right hand tremor"); AR 871, 877 (December 4, 2020, Dr. Thompson observed that Plaintiff "is still having difficulty with grip strength," reporting that Plaintiff's right hand grip and pinch decreased from 10psi to 5psi, while her left hand remained the same at 20lbs); AR 273 (December 14, 2020, Dr. Brown observed "tenderness to palpation about the lateral epicondyle and tenderness about the radial tunnel[,]" and "actually giveaway weakness in the finger and thumb extensors bilaterally," Tinel's test at the wrist was negative, but "x-rays of the elbow demonstrate an element of enthesopathy," so Dr. Brown performed an injection of Celestone and Lidocaine "in the right lateral epicondylar area"[13] and assessed Plaintiff as having "radial tunnel [and] possible double crush."); AR 887 (December 29, 2020, Dr. Thompson reported that Plaintiff's right hand grip and pinch was 8psi, while her left hand was 20lbs); AR 817 (January 6, 2021, Dr. Thompson reported that Plaintiff's right hand grip and pinch remained at 8psi, while her left hand remained at 20lbs); AR 303 (February 16, 2021, Dr. Nolan observed "significant tenderness on the base of the left thumb," and performed an injection of triamcinolone on CMC joint[14] of Plaintiff's left hand, diagnosing that Plaintiff had "osteoarthritis of multiple joints." He reported "no active synovitis on the hands joints,

---

[13] The outer side of the right elbow. *Elbow*, UConn Health: Orthopedics and Sports Medicine https://health.uconn.edu/orthopedics-sports-medicine/conditions-and-treatments/where-does-it-hurt/elbow/lateral-epicondylitis/#:~:text=The%20bump%20on%20the%20outer,raise%20the%20hand%20and%20wrist. (last visited Mar. 4, 2024).

[14] The carpometacarpal joint, which is located at the base of the thumb. *Thumb Arthritis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/thumb-arthritis/symptoms-causes/syc-20378339 (last visited Mar. 4, 2024).

wrists," and Plaintiff's "range of motion is intact throughout." He "recommend[ed] hand exercises for hand osteoarthritis."); AR 706–07 (May 13, 2021, Dr. David reported that Plaintiff's right wrist and right hand showed no tenderness, full range of motion, full strength, no joint instability, and Tinel's sign was negative over carpal tunnel. However, Dr. David did assess Plaintiff as having "essential tremor."); AR 789 (July 28, 2021, Dr. Tutuneu performed the Finkelstein test,[15] which was positive on the left hand"); AR 784 (July 29, 2021, x-rays of hands and wrists showed "mild degenerative changes of the left first carpometacarpal joint," while joint spaces were "well-maintained" and there were no findings of bony erosion or juxta-articular osteopenia); AR 779 (August 5, 2021, Dr. Proshkina observed "tenderness with palpation of the left thumb with mild edema," noting Plaintiff's "severe difficulties with using both hands due to tremor affecting her right third finger and pain at the left thumb." Regarding her left hand, Dr. Proshkina diagnosed De Quervain's tenosynovitis, noting a lack of improvement after the injection by Dr. Nolan a year prior); AR 775 (September 13, 2021, Dr. Proshkina observed "tenderness with palpation of the left thumb"); AR 764 (October 13, 2021, Dr. Proshkina observed a "mild tremor affecting right hand." She also noted that Plaintiff had "severe tenderness at the base of the left thumb"); AR 753 (October 14, 2021, Dr. Mainiero reported that Plaintiff "presents with r[ight] hand tremor" and noted "impaired AROM [active range of motion]," "impaired strength grossly 3-/5", and "right arm tingling/numbness based on position"); AR 746–47 (October 21, 2021, Dr. Proshkina observed "severe tenderness with palpation of … both wrists with mild hands edema," and noted "worsening of the pain with a brace," advising Plaintiff to consult with a wrist surgeon regarding her left hand De Quervain's tenosynovitis).

---

[15]   This test is used to diagnose De Quervain tenosynovitis, which causes pain in the hand and thumb. *De Quervain Tenosynovitis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/de-quervain-tenosynovitis/diagnosis-treatment/drc-20371337 (last visited Mar. 4, 2024).

Here, Dr. Proshkina and Dr. David[16] both found that Plaintiff had functional limitations regarding her hands. AR 741–42 (Dr. Proshkina's opinion, that Plaintiff should rarely or never engage in fine and gross manipulative activities, and never engage in repetitive hand actions); AR 744 (Dr. David's opinion, that Plaintiff should rarely engage in fine and gross manipulative activities). The ALJ makes no meaningful mention of Plaintiff's hands in his lengthy opinion, other than his brief step two finding, a passing reference to one appointment with Dr. Brown regarding Plaintiff's left thumb,[17] and an improper reference to a lack of shaking that could be construed to reference Plaintiff's right hand tremor, with regard to Dr. David's opinion. This is insufficient to determine whether the ALJ considered Plaintiff's hand limitations when crafting the RFC. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (noting that an ALJ's decision must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (explaining that an ALJ must provide some reasoning to allow the court to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence").

---

[16] Even if the Court had found that substantial evidence supported the ALJ's rejection of Dr. David's opinion, Dr. Proshkina's opinion regarding the functional limitations of Plaintiff's hands remains. And severe and non-severe impairments that have functional limitations should be addressed. *See Zepur H.*, 2023 U.S. Dist. LEXIS 143787, at *13 (one doctor opined that the claimant had functional limitations, but the ALJ found his opinion unpersuasive and the plaintiff did not contend that this was error, thus, there was no remaining evidence in the record regarding limitations, so the ALJ not considering neck and back impairments was harmless error).

[17] Of note, the ALJ acknowledged that Dr. Brown found "tenderness to palpation about the lateral epicondyle and tenderness about the radial tunnel, giveaway weakness in the finger and thumb extensors bilaterally," and "administered a steroid injection to the right lateral epicondylar area, with little benefit reported." AR 23 (emphasis added). However, this is the extent of the ALJ's discussion.

Thus, the ALJ's failure to address Plaintiff's hand ailments when formulating and determining the RFC, and the persuasiveness of Dr. Proshkina's and Dr. David's opinions, was error. *See, e.g.*, *Zepur H.*, 2023 U.S. Dist. LEXIS 143787, at *13 (collecting cases and finding error when there was "no indication that the ALJ considered Plaintiff's neck and back impairments in assessing Plaintiff's RFC," noting that, "[a]lthough the ALJ stated that he considered 'all of the evidence'[18] in the RFC, the Court is not persuaded that he did"); *MacDowell v. Kijakazi*, No. 21cv00729-AC, 2023 WL 2602228, at *9 (E.D. Cal. Mar. 22, 2023) (remanding when the ALJ made a few "scattered references" but "did not clearly consider the impact of [plaintiff's non-severe impairments] in the RFC determination," because "[t]he impact of non-severe impairments needed to be addressed with respect to the RFC"); *Goodman v. Berryhill*, No. C16-285-JCC, 2017 WL 2610043, at *6 (W.D. Wash. June 16, 2017) (finding ALJ reasonably determined that plaintiff's headache and shoulder impairments were non-severe, but remanding because "the ALJ fail[ed] to discuss or consider [plaintiff]'s headache and shoulder impairments at all in determining her RFC as required by the regulations").

## H.    Whether the Errors are Harmless

"The Court may not reverse an ALJ's decision on account of a harmless error." *Buck*, 869 F.3d at 1048. An error is harmless only if it is "inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 494 (quotations omitted). When "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1103).

Here, during the administrative hearing, counsel asked the vocational expert:

---

[18] Similarly, here, the ALJ stated that he formulated the RFC "after careful consideration of the entire record." AR 20.

> Q:      … this hypothetical person, in addition to the limitations found in the first hypothetical[19] would have occasional or less ability to handle or finger with the dominant right upper extremity. All the other limitations would remain the same. Would that individual be able to do the jobs that you identified?
>
> A:      No.
>
> Q:      Would that individual be able to do any work at the light level?
>
> A:      No.

AR 46. Thus, if Dr. Proshkina's or Dr. David's opinions regarding Plaintiff's manipulative limitations had been accepted by the ALJ, Plaintiff would have been found disabled. Further, the ALJ's failure to meaningfully consider the supportability of Dr. Proshkina's opinion and the consistency of Dr. David's opinion is also "not inconsequential" since it could have impacted the final RFC. *See Q.C. v. Kijakazi*, 2022 U.S. Dist. LEXIS 171144 (finding error was not harmless because "ALJ's failure to give proper consideration and analysis of whether [a doctor]'s report was supported and consistent, did cause Plaintiff harm").

    Thus, the errors are not harmless and the Court recommends that the decision of the Commissioner be **REVERSED**. The Court, however, "expresses no opinion on the level of persuasiveness that should be ascribed to" Dr. Proshkina or Dr. David, "[n]or does the

---

[19] The first hypothetical was:

> This hypothetical claimant can lift and carry 20 pounds occasionally, 10 pounds frequently. Can stand or walk for six hours out of eight, sit for six. Should never climb ropes, ladders, or scaffolds. Can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally reach out front and laterally with her right arm as well as overhead. She can frequently handle and finger and she should avoid concentrated exposure to temperature extremes of hot and cold, vibration, fumes, odors, dust and gases, unprotected heights and moving and dangerous machinery.

AR 43.

undersigned express what plaintiff's RFC should ultimately be. These are for the ALJ to decide." *Buethe*, 2021 WL 1966202, at *7.

## V.   WHETHER THE ALJ PROPERLY CONSIDERED PLAINTIFF'S TESTIMONY

The second issue presented by Plaintiff for appeal is whether the ALJ properly considered Plaintiff's pain and limitation testimony. ECF No. 19 at 16–26.

### A.   Parties' Positions

Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's pain and limitation testimony. ECF No. 19 at 17. The ALJ was required to specifically identify the testimony he finds not to be credible and explain what evidence undermines that testimony, and Plaintiff contends the ALJ did not do so. *Id*. at 18. Plaintiff reiterates that the objective record, which the ALJ found was not entirely consistent with Plaintiff's subjective complaints, should not be the sole basis for rejecting her pain and limitation testimony. *Id*. The ALJ noted that Plaintiff walking her dog, and having a slightly antalgic gait but other times normal gait, was inconsistent with Plaintiff's testimony; however, Plaintiff argues that the ALJ did not point to evidence of normal use of her right hand. *Id*. at 18–19. Plaintiff argues that the ALJ erred by failing to reject the severity of each specific symptoms. *Id*. at 19.

Defendant argues that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony, and adequately "show[ed] his work." ECF No. 19 at 20. Defendant provides examples of inconsistencies between her testimony and the record, including improvement in her right shoulder after surgery and improvement with conservative treatments (such as heat, ice, and over the counter pain medication) in her legs and knee. *Id*. at 21. Defendant also argues that, contrary to Plaintiff's position, objective medical evidence can be used to undercut Plaintiff's testimony, and cites examples of such. *Id*. Defendant also argues that inconsistencies between Plaintiff's testimony and her activities, such as walking her dog and going on long walks, is a sound basis for discounting

Plaintiff's allegations, contending that the activities need not translate to levels needed for employment. *Id*. at 22.

Plaintiff responds that her shoulder improvements do not show that her other symptoms, such as hand tremors or knee pain, improved. ECF No. 19 at 24–25. Plaintiff again alleges that the ALJ cherry-picked from the record to show effective treatment when the record as a whole shows none, and that her activities of daily life are unaffected by her impairments when they were, in fact, impacted. *Id*. at 25–26. Plaintiff notes that "Social Security Ruling 96-8p directs the ALJ to give 'careful consideration' to subjective descriptions as they 'may indicate more severe limitation or restrictions than can be shown by medical evidence alone.'" *Id*. at 25. Plaintiff argues that Plaintiff's activities must "bear a meaningful relationship to the activities of the workplace." *Id*. at 26.

### B.   Legal Standard

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. *Id*. (citing *Garrison*, 759 F.3d at 1014–15). If the claimant satisfies this first step and there is no evidence of malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting the claimant's testimony about the symptom severity. *Trevizo*, 871 F.3d at 678 (citation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each"); *Smolen*, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). When rejecting testimony, the ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995));

*see also Brown-Hunter*, 806 F.3d at 494 (finding legal error where the ALJ "failed to identify the testimony she found not credible"); *Smolen*, 80 F.3d at 1284 ("[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion").

The ALJ shall determine whether to credit a claimant's statements about pain and limitations by referring to the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7–*8 (Oct. 25, 2017). However, the lack of objective medical evidence supporting a claimant's allegations cannot provide the sole basis for rejecting his statements about the severity of his symptoms and limitations. *Id.*; *see also Trevizo*, 871 F.3d at 679; 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work … solely because the available objective medical evidence does not substantiate your statements"). "[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *6–*7.

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); *see Brown-Hunter*, 806 F.3d at 493 ("A finding that a claimant's testimony is not credible

must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

"The clear and convincing standard is the most demanding required in Social Security cases." *Revels*, 874 F.3d at 655 (quoting *Garrison*, 759 F.3d at 1014–15). General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. *See Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1102; *Burch*, 400 F.3d at 680. An ALJ's failure to identify specific statements and explain why they are not credible constitutes reversible error because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence. *See Brown-Hunter*, 806 F.3d at 489.

The Ninth Circuit has advised that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Albertson v. Colvin*, 659 F. App'x 372, 374 (9th Cir. 2016) (holding the claimant's ability to perform basic household chores and occasionally run errands was not enough to discredit her pain testimony).

## C.     ALJ's Determination Regarding Plaintiff's Pain and Limitation Testimony

At the first step of the two-step credibility analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 21. The ALJ did not address any evidence of malingering, so he proceeding to the second step. AR 21. At the second step, the ALJ found that "statements concerning the intensity, persistence and limiting effects of these symptoms were not

entirely consistent with the medical evidence and other evidence in the record." AR 21. The ALJ explained:

> The objective medical evidence and the claimant's treatment history were not entirely consistent with her allegations about the intensity, persistence, and limiting effects of her symptoms. Although the claimant has received treatment for the allegedly disabling symptoms which would normally weigh somewhat in the claimant's favor, the record also revealed that the treatment has been generally successful in controlling those symptoms. The records showed the claimant reported improvement with meloxicam, but then she worsened after being off it (1F/9). She noted her pain and other symptoms improved with other medications and other conservative treatments (see, e.g., 9F/35; 10F/2, 16, 29; 13F/4, 25, 42). In January 2021, the claimant reported significant improvement in her right arm discomfort after undergoing right shoulder rotator cuff repair revision and was not using any painkillers at that time (7F/66; 9F/28).

> Although the claimant reported a limited ability to stand, walk, or sit, she has described activities inconsistent with such restrictions. In particular, she reported walking her dog and exercising (1F/17; 5F/19). In addition, physical examinations have revealed slightly antalgic gait (13F/7, 45), but many have shown a normal gait (6F/17, 32, 36; 10F/4, 18, 31, 36). Based on these reports, the undersigned found the claimant was limited to standing and walking for six hours in an eight-hour workday, because the evidence did not support a more restrictive finding.

AR 22.

### D.   Plaintiff's Pain and Limitation Statements Regarding her Hands

Here, the ALJ did not show his work with regard to Plaintiff's subjective statements regarding her hands. *See Brown-Hunter*, 806 F.3d at 489 (an ALJ's failure to identify specific statements and explain why they are not credible constitutes reversible error

because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence).

In Plaintiff's Exertion Questionnaire, Plaintiff represented that she was "unable to type or write well[.]" AR 195. During the administrative hearing, Plaintiff testified that "I have bad tremors … on the right hand" and "my left hand [ha]s the brace [for left thumb]." AR 38. However, though her hand ailments were repeatedly alleged, the ALJ does not provide any explanation, let alone clear and convincing reasons, for discrediting her testimony, making no mention of the limiting effects of those symptoms and or incorporating manipulative restrictions into her RFC.

To the extent that the ALJ's statement regarding "[t]he objective medical evidence and the claimant's treatment history were not entirely consistent with her allegations about the intensity, persistence, and limiting effects of her symptoms," (AR 22), was referring to Plaintiff's hand ailments, the Court finds that this is not a clear and convincing reason supported by substantial evidence. *See Lambert*, 980 F.3d at 1277 ("The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision.' But this 'boilerplate statement' by way of 'introductory remark,' which is 'routinely include[d]' in ALJ decisions denying benefits, did not 'identify what parts of the claimant's testimony were not credible and why.'"). Further, the record is replete with Plaintiff's subjective statements regarding her hands that are consistent with objective findings.[20] *See* AR 833–34 (September 11, 2020, Plaintiff reported that she "is still experiencing R[ight] thumb

---

[20] There are also multiple statements that remain consistent, even when no objective findings are included at the time of her statements, such as being unable to open a tight or new jar. *See, e.g.*, AR 830 (Sept. 4, 2020); AR 861 (Nov. 11, 2020); AR 879 (Dec. 4, 2020); AR 889 (Dec. 29. 2020).

numbness/tingling occasionally, usually when sitting on the couch for prolonged periods," which was consistent with Dr. Thompson observing that Plaintiff "experienced R[ight] thumb numbness/tingling after several minutes of performing shoulder pendulums that was not reproduced with any other exercises or positions."); AR 336–37 (September 24, 2020, Plaintiff reported "increased righthand shaking since surgery," which was consistent with Dr. David observing a "right hand tremor [that] increased with movement/use decreased at rest."); AR 309–10 (October 7, 2020, Plaintiff reported "having persistent pain in the hands," which was consistent with Dr. Nolan finding "significant myofascial tenderness" on Plaintiff's wrists and elbows); AR 721–22 (November 24, 2020, Plaintiff reported "increased right hand tremor, along with numbness from her forearm into her thumb," which was consistent with Dr. David observing a "right hand tremor [that] increased with movement/use decreased at rest" and referring her to another doctor "right hand tremor and possible radial tunnel syndrome"); AR 871, 877, 879 (December 4, 2020, Plaintiff reported numbness and tingling in her thumb, and an inability to open a tight or new jar, which is consistent with Dr. Thompson observing "difficulty with grip strength" and her right hand grip and pinch decreasing from 10psi to 5psi, while her left hand remained the same at 20lbs); AR 272 (December 14, 2020, Plaintiff reported "ongoing symptoms of pain and radiating numbness in the radial aspect of her hand and thumb area," which was consistent with Dr. Brown observing "tenderness to palpation about the lateral epicondyle and tenderness about the radial tunnel[,]" and "actually giveaway weakness in the finger and thumb extensors bilaterally," and performing an injection of Celestone and Lidocaine "in the right lateral epicondylar area"); AR 885–87 (December 29, 2020, Plaintiff reported "that her R[ight] hand is shaking with writing or lifting" and "her pain is preventing her from … writing with her R[ight] UE [upper extremity]," which is consistent with Dr. Thompson reporting that Plaintiff's right hand grip and pinch was 8psi, while her left hand was at 20lbs); AR 817, 819 (January 6, 2021, Plaintiff reported that she is unable to open a tight or new jar, which is consistent with Dr. Thompson reporting that Plaintiff's right hand grip and pinch was 8psi, while her left hand was at 20lbs); AR 301, 303 (February

16, 2021, Plaintiff reported soreness of her left wrist, "numbness and tingling radiating down from her elbow to her wrist," noting that "[h]er most painful joint at this time is her left thumb. The thumb hurts on the base and it makes it difficult for her to do activities of daily living," which is consistent with Dr. Nolan observing "significant tenderness on the base of the left thumb" and injecting triamcinolone in CMC joint of Plaintiff's left hand, noting that Plaintiff had "failed conservative measures" including topical and oral NSAIDs[21]); AR 786, 789 (July 28, 2021, Plaintiff reported "pain at the left thumb base. She has to use a thumb brace [and] [i]t hurts to move her thumb," which is consistent with Dr. Tutuneu's evaluation of the Finkelstein test, which was positive on the left hand); AR 779 (August 5, 2021, Plaintiff reported "worsening of the [left thumb] pain with a brace," noting the "steroid injection with Dr. Nolan [in December 2020] and did not have any improvement," was consistent with Dr. Proshkina observing "tenderness with palpation of the left thumb with mild edema. Patient has severe difficulties with using both hands due to tremor affecting her right third finger and pain at the left thumb"); AR 775 (September 13, 2021, Plaintiff reported "worsening of the [left thumb] pain with a brace," noting the "steroid injection with Dr. Nolan [in December 2020] and did not have any improvement," which was consistent with Dr. Proshkina observing "tenderness with palpation of the left thumb" and diagnosing De Quervain's tenosynovitis of the left hand); AR 753 (October 14, 2021, Plaintiff reported a right hand tremor and pain, which was consistent with Dr. Mainiero observing a right hand tremor and noting that Plaintiff's right upper extremity had "impaired AROM [active range of motion]" and "impaired strength grossly 3-/5", and her "right arm tingling/numbness based on position").

Here, the ALJ erred by not addressing Plaintiff's subjective testimony regarding her hands, and addressing whether he gave credibility to her statements. *See Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) ("The ALJ therefore erred by disregarding all of

---

[21] Non-steroidal anti-inflammatory drugs.

Smith's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony. This reasoning fails to comply with our holding in *Brown-Hunter*, … In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion."); *Diana L. v. Comm'r of Soc. Sec. Admin.*, No. C23-5019-SKV, 2023 WL 4840047, at *4 (W.D. Wash. July 28, 2023) ("The ALJ also erred in failing to address Plaintiff's testimony regarding her need to use the bathroom on an urgent basis multiple times per day, [due to her IBS] … Despite the ALJ's finding at step two that Plaintiff's IBS is not severe [], the ALJ was nonetheless required to consider all of Plaintiff's alleged limitations, even those pertaining to conditions that are not severe, when assessing her RFC. [] On remand, the ALJ shall reconsider Plaintiff's physical allegations and either credit them or provide legally sufficient reasons to discount them.").

The "credibility determination is exclusively the ALJ's to make, and ours only to review[, thus,] we are constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 494 (internal quotation omitted). Here, since the ALJ did not assert reasons for discounting the credibility of Plaintiff's testimony regarding her hands, the Court cannot effectively review the ALJ's opinion. However, "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Id.* at 495 (quoting *Treichler*, 775 F.3d at 1102).

### E.   Plaintiff's Subjective Testimony Regarding Standing and Walking

First, the ALJ referenced that Plaintiff "reported walking her dog and exercising," as a reason to discredit her subjective testimony regarding her ability to stand and walk, and cited 1F/17 (AR 237) and 5F/19 (AR 309) as support. AR 22. The first treatment note cited references a March 30, 2020, appointment with Dr. MacLean. AR 237. This is over four months before Plaintiff's disability onset date of August 1, 2020, and is an improper consideration. *See Kounitski v. Berryhill*, No. 16cv3018-LHK, 2017 WL 5900192, at *18

(N.D. Cal. Nov. 28, 2017) ("the fact that Kounitski managed several vacation rental and investment properties in April 2011—before her alleged onset date—is not a clear and convincing reason supported by substantial evidence to discount her credibility where there is no indication in the record that she continued to dedicate a similar amount of time or maintain a similar level of responsibility with regard to the rental properties after her alleged onset date"); *Freeman v. Astrue*, No. 10cv167-CI, 2011 WL 4625334, at \*7, \*10 (E.D. Wash. Oct. 3, 2011) (finding that "the ALJ improperly considered evidence of Plaintiff's activities from before the alleged onset date" when determining credibility, which did not meet the "clear and convincing" standard). Moreover, during the appointment, Plaintiff reported "joint pain [in her] hands, knees, and feet, [with] feet [being] most troublesome" and "state[d] that she doesn't let the pain hold her back, she continues to walk her dog and exercise but she does modify. She is not able to participate in activities that she'd like."[22] AR 237. Here, Plaintiff "should not be penalized for attempting to lead [a] normal li[fe] in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted); *see also Sloane S.*, 2023 WL 2017284, at \*12 (remanding when "[t]he ALJ place[d] substantial weight on Plaintiff's ability to complete daily activities, rather than evaluating the full context of the activities and the pain she experiences while performing them").

The second treatment note cited references an October 8, 2020, visit with Dr. Nolan. AR 309. During the appointment, Plaintiff "state[d] that the pain in the feet is mainly the 1st few steps and then improves but reoccurs after being on her feet for long time for example after long walks." AR 309. Again, the ALJ does not read the statement in context. Instead of supporting the ALJ's conclusion that Plaintiff "reported walking her dog and exercising" (AR 22), the citation reveals that Plaintiff was in pain while walking, as she

---

[22] Of note, three months after this appointment and still before her onset date, on June 8, 2020, Dr. MacLean noted that Plaintiff's "ADLs [activities of daily living] [are] beginning to be affected." AR 266.

complained of "persistent pain" in her right knee. AR 309. Further, it is clear from the record that, while Plaintiff may have engaged in walking, she experiences pain when doing so. *See* AR 826 (September 4, 2020, a goal of physical therapy was to "return to hobbies of swimming and walking her dog"); AR 847 (October 2, 2020, Plaintiff "reports having difficulty standing and walking due to R[ight] knee pain."); AR 494 (November 12, 2020, Plaintiff "reports having worsening of the pain of the right knee that affects her ability to ambulate and her activities"); AR 307 (November 17, 2020, Plaintiff "states that she has not been as active as she would like to due to overall joint pain, especially in the right knee"); AR 887 (December 29, 2020, subjective Plaintiff "is having anterior R[ight] knee pain with walking, standing, straightening her knee in an open chain position and going down stairs); AR 811 (January 6, 2021, Plaintiff reported "Right knee pain with walking, knee ROM [range of motion] and going down stairs"); AR 786 (July 28, 2021, Plaintiff "reports pain with walking, [explaining that] it clicks" and regarding activities, "she tries to swim"); AR 769 (September 15, 2021, Plaintiff reported "ongoing right knee pain" which she rated as an 8/10, and "persistent pain in her feet with weightbearing and walking"); AR 767 (September 21, 2021, Plaintiff "states the [foot and heel] pain is worse with first steps compared to walking"); AR 748 (October 21, 2021,[23] Plaintiff "complains of both knees give out when walking or going down steps. … complains of both knees catch and lock" and notes that "her [pain] symptoms are worse with standing and walking"). Thus, the Court finds that the ALJ did not provide clear and convincing reasons to discredit Plaintiff's testimony. *See, e.g.*, *Sloane S.*, 2023 WL 2017284, at *12.

Next, the ALJ stated that "physical examinations have revealed slightly antalgic gait [] but *many* have shown a normal gait." AR 22 (emphasis added). The ALJ's statements regarding Plaintiff's gait are likewise unavailing and are reminiscent of impermissible

---

[23] In this treatment note, Dr. Tran wrote that "activities/goals: walking her dog." AR 750. It is unclear whether this was a stated activity or a goal, so the Court did not include it in the analysis.

cherry-picking. The ALJ cites to two examples of Plaintiff having a slightly antalgic gait, while citing to seven examples of examinations showing a normal gait. AR 22. Thus, the ALJ uses this disparity to further discredit Plaintiff's testimony about her limited ability to walk. AR 22. Of the seven examples of normal gait, only two are persuasive. Four of the citations are from treatment records before Plaintiff's alleged disability onset date. AR 350 (July 30, 2020); AR 733 (July 30, 2020); AR 354 (June 23, 2020); and AR 738 (June 23, 2020).[24] Of the remaining three, two are duplicates. AR 335 (January 7, 2021); AR 720 (January 7, 2021). The ALJ then ignores other findings in the record regarding Plaintiff's gait. *See* AR 887 (December 29, 2020, Dr. Thompson reported "Gait: R[ight] knee hyper extension and decrease stance time on R[ight] LE [lower extremity]"); AR 772 (September 15, 2021, Dr. Tutuneu found that Plaintiff was "positive for … gait problem"); AR 758 (October 14, 2021, Dr. Mainiero found "gait instability / unsteadiness on feet" and "decreased gait stability/quality"). Further, Dr. Thompson and Dr. Lopez reported providing "gait training"[25] during many of Plaintiff's visits. AR 829 (September 4, 2020); AR 867 (November 11, 2020); AR 874 (December 4, 2020); AR 888 (December 29, 2020); AR 818 (January 6, 2021). Further, though other records do not use the word "gait," they do reference Plaintiff's ability to ambulate, which is equivalent. *See, e.g.*, AR 765 (October 13, 2021, Dr. Proshkina observed "difficulties with ambulation"); AR 746 (October 21,

---

[24] The Court also notes that the four pre-onset records cited are actually two records, because the ALJ cited to duplicate records. This could be evidence that the ALJ sought to inflate his 2:2 ratio of normal to antalgic.

[25] "Gait training is a set of exercises that are specifically implemented by your physical therapist to help you walk better. The exercises involve improving motion in your lower extremity joints, improving strength and balance, and mimicking the repetitive nature of your legs that occur while walking." *Gait Training Exercises in Physical Therapy*, Very Well Health (Mar. 14, 2022), https://www.verywellhealth.com/gait-training-in-physical-therapy-5069884#:~:text=Gait%20training%20is%20a%20set,legs%20that%20occur%20while%20walking. (last visited Mar. 4, 2024)

2021, Dr. Proshkina observed "difficulties with ambulation"). Thus, the Court finds that the ALJ did not provide clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's limitation statements regarding walking. *See Ignacio P. v. Kijakazi*, No. 22cv1769-MSB, 2024 WL 211797, at *12 (S.D. Cal. Jan. 19, 2024) (finding that the ALJ did not "engage meaningfully" with the record and plaintiff's testimony, concluding that "the ALJ's cherry-picking of certain inconsistencies ignores the record as a whole and is not a clear, convincing, and specific reason for discrediting Plaintiff's testimony"); *see cf. Rachel B. v. Comm'r of Soc. Sec. Admin.*, No. 19cv1574-DWC, 2020 WL 1910410, at *5 (W.D. Wash. Apr. 20, 2020) (when ALJ cherry-picked from the record, court found that the ALJ's decision to discount Plaintiff's testimony was not clear and convincing or supported by substantial evidence).

### F.    Improvement with Conservative Treatment

The ALJ explained that:

> The objective medical evidence and the claimant's treatment history were not entirely consistent with her allegations about the intensity, persistence, and limiting effects of her symptoms. Although the claimant has received treatment for the allegedly disabling symptoms which would normally weigh somewhat in the claimant's favor, the record also revealed that the treatment has been generally successful in controlling those symptoms. The records showed the claimant reported improvement with meloxicam, but then she worsened after being off it (1F/9). She noted her pain and other symptoms improved with other medications and other conservative[26] treatments (see, e.g., 9F/35; 10F/2, 16, 29; 13F/4, 25, 42). In January 2021, the claimant reported significant improvement[27] in her right arm discomfort after

---

[26] Courts in this circuit have held that injections are not "conservative" treatment. *See Garrison*, 759 F.3d at 1015 n.20; *Patricia O. v. Kijakazi*, No. 21cv376-CAB-BGS, 2022 WL 17760387, at *10 (S.D. Cal. Dec. 19, 2022); *Harvey v. Colvin*, No. CV-13-5376-PLA, 2014 WL 3845088, at *9, *9 n.8 (C.D. Cal. Aug. 5, 2014).

[27] Of note, two of the citations the ALJ utilized for the sentence above contradict this finding. AR 786 (July 28, 2021, "She had right shoulder surgery [and] she still has pain there. She was told she needs another surgery but she is not willing to go forward with it"); AR 769 (Sept. 15, 2021, "She had 2 right shoulder surgeries [and] she still has pain there.").

undergoing right shoulder rotator cuff repair revision and was not using any painkillers at that time (7F/66; 9F/28).

AR 22. First, the Court could arguably find that the ALJ was not specific enough regarding which "symptoms" and what exact testimony he is discrediting. *See Brown-Hunter*, 806 F.3d at 492 ("The ALJ here made the identical conclusory statement [that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms'] and likewise failed to identify specifically which of [plaintiff]'s statements she found not credible"). Though the Commissioner cites to specific testimony that the ALJ was discounting, the ALJ does not. *Compare* ECF No. 19 at 20–21 ("Plaintiff alleged she could not work due to pain and limitations in her use of the right arm" and "Plaintiff also alleged disability due to pain and other physical limitations, including pain in the legs") *with* AR 22 ("The objective medical evidence and the claimant's treatment history were not entirely consistent with her allegations about the intensity, persistence, and limiting effects of her symptoms. … treatment has been generally successful in controlling those symptoms").

Second, the Court notes that many of the reasons cited by the ALJ are not supported by substantial evidence. *See Hollingsworth v. Astrue*, No. 11-955-DSD-FLN, 2012 WL 2119255 (D. Minn. May 24, 2012) (finding that ALJ's conclusion that "treatment has been generally successful" was not supported by substantial evidence when the citations to the record showed "some improvement" but showed that plaintiff "continued experiencing back pain"). Here, the ALJ's cited examples of medication and conservative treatment improving her symptoms do not pass muster, as they are weak and often contradictory. *See* AR 731, 733 (July 30, 2020, "temporary improvement" in right shoulder with "a cortisone injection, heat, ice, OTC [over the counter] NSAIDs at prescription strength, physical therapy, physician directed exercise program and prescribed NSAIDs," however, Dr. David recommended surgery for Plaintiff's shoulder); AR 636 (December 17, 2020, Cymbalta and gabapentin "help[] to reduce the discomfort in the joints particularly in the knee," however, injection to right elbow revealed "no improvement of symptoms"); AR 718 (January 7, 2021, "temporary improvement" in right shoulder with "a cortisone

injection, heat, ice, OTC [over the counter] NSAIDs at prescription strength, physical therapy, physician directed exercise program and prescribed NSAIDs," however, Dr. David recommended a second surgery for Plaintiff's shoulder); AR 704 (May 13, 2021, "some improvement" in right shoulder with "heat, ice, and OTC [over the counter] NSAIDs at prescription strength"); AR 786 (July 28, 2021, methotrexate "did not help" Plaintiff's rheumatoid arthritis, "and later she was getting shots [of Cimzia or Simponi] once a month [that] weren't beneficial either," but "her symptoms improved" with Cymbalta and gabapentin. A steroid injection of her right knee "helped a lot," but the next steroid injection resulted in "pain with walking." "She had right shoulder surgery [and] she still has pain there"); AR 769, 774 (September 15, 2021, methotrexate "did not help" Plaintiff's rheumatoid arthritis, "and later she was getting shots [of Cimzia or Simponi] once a month [that] weren't beneficial either," but "her symptoms improved" with Cymbalta and gabapentin. A steroid injection of her right knee "helped a little," but the next steroid injection resulted in "pain with walking." "She had 2 right shoulder surgeries [and] she still has pain there." Dr. Tutuneu performed a Durolane injection on Plaintiff's right knee and ensured that Plaintiff "understands that the benefits will be limited"); AR 748 (October 21, 2021, Plaintiff's right knee "symptoms are improved with ice," Medrol packs provided "moderate relief," but her "symptoms are worse with standing and walking," and physical therapy and a recent Durolane injection both provided "no relief"). The ALJ cited to a page from Dr. Tran's treatment notes from October 21, 2021 (AR 748, 13F/4); later in his notes, Dr. Tran assessed the following:

> "I discussed different management options with her including conservative management with NSAIDS/Tylenol, physical therapy, and cortisone injection. She [ha]s actually tried most of these modalities and failed to obtain any substantial relief. … Unfortunately, given her mild osteoarthritis through the rest of the knee, I do not believe she would be a good surgical candidate for partial or total knee arthroplasty at this time. She is unfortunately in an in between stage where her arthritis is not severe enough to indicate any surgical intervention however she has failed most conservative forms of management. At this point given her anterior knee pain that is resistant to treatment, I think

3:22-cv-01963-WQH-AHG

1
2

it would be potentially reasonable to be referred to a pain specialist for
potential consideration for nerve block/ablation.

3
4
5
6
7
8

AR 751–52 (emphasis added). As such, the Court disagrees with Defendant's contention
in the joint motion that the "ALJ reasonably rejected Plaintiff's allegations given such
reports of effective treatment," (ECF No. 19 at 21), since the ALJ's own citations[28] show
that his conclusion is not supported by substantial evidence. As such, the Court finds that
the ALJ did not provide clear and convincing reasons supported by substantial evidence to
discredit Plaintiff's testimony.

9

## G.   Whether the Errors are Harmless

10
11
12
13
14
15
16
17
18
19
20

Having concluded that the ALJ's purported reasons for discounting Plaintiff's
testimony are not supported by "specific, clear, and convincing reasons," the Court further
finds that the ALJ's failure to provide clear and convincing reasons for discounting
Plaintiff's pain testimony was not harmless because it "precludes us from conducting a
meaningful review." *Brown-Hunter*, 806 F.3d at 494, 489; *Rebecca P.R. v. Kijakazi*, No.
23cv742-CAB-DEB, 2024 U.S. Dist. LEXIS 27711, at *8–*9 (S.D. Cal. Feb. 16, 2024);
*see also Michael Louis W. v. Kijakazi*, No. 20cv2277-LL-MSB, 2022 WL 2701988, at *10
(S.D. Cal. July 12, 2022) (finding harmful error where the ALJ failed to specify which of
Plaintiff's statements regarding pain and physical dysfunction he discredited). Thus, the

21

22
23
24
25
26
27
28

[28] Further, the record is replete with additional examples of treatments not being successful.
*See* AR 309, 311 (Oct. 7, 2020, 60mg duloxetine "did not make a difference and [plaintiff]
wishes to cut back on that and stop it," and "she has not had any benefit from Cymbalta
and she would like to stop it"); AR 494 (Nov. 12, 2020, Plaintiff "has been taking Flexeril
until a few days ago [and] did not feel that it was particularly helpful for muscle aches and
pains but it was helpful for sleep); AR 491 (Dec. 3, 2020, "patient continues to have pain
in the right knee and has received steroid injections from another doctor approximately 3
weeks ago. … the pain did not improve significantly"); AR 799 (June 23, 2021, Plaintiff
"has intermittent pain in right shoulder for the last few months" and "has pain in right knee
that is not controlled with gaba[pentin]").

errors are not harmless and the Court recommends that the decision of the Commissioner be **REVERSED**.

## VI.   REMAND

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *Garrison*, 759 F.3d at 1019. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). A remand for an immediate award of benefits is appropriate only in rare circumstances. *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017). The Court concludes that "[t]he rare circumstances that result in a direct award of benefits are not present in this case." *Id.*

Instead, the Court finds further administrative proceedings would serve a meaningful purpose so that medical opinions and subjective testimony may be properly evaluated. On remand, the ALJ must: (1) evaluate the consistency and supportability factors in Dr. Proshkina's and Dr. David's opinions; (2) consider and discuss Plaintiff's non-severe impairments when crafting Plaintiff's RFC; and (3) provide specific reasons for the weight given to Plaintiff's testimony, and "those reasons must be (a) consistent with and supported by the evidence cited, and (b) clearly articulated so the Plaintiff and any subsequent reviewer can assess how the adjudicator evaluated the claimant's symptoms." *See Kimberli M.S.*, 2023 WL 2346330, at *13.

## VII.   CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(a) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) **REVERSING** the

Commissioner's denial of disability benefits and **REMANDING** for further administrative proceedings. ECF No. 19; AR 15–26.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **March 18, 2024**. The document should be captioned "Objections to Report and Recommendation."

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Yist*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  March 5, 2024

_____

Honorable Allison H. Goddard
United States Magistrate Judge